This is a workmen's compensation suit.
On February 3, 1976 the plaintiff was operating an overhead crane as an employee of the defendant when the crane separated from its supporting structure and collapsed. The crane was attached to the roof of the defendant's plant and the plaintiff fell to the floor of the plant when the crane collapsed. The plaintiff was taken to the hospital where he was treated and released. Later, on February 9, 1976, the plaintiff was admitted to the hospital for treatment of a back injury suffered in the fall, and to run some tests. It was at this time that Dr. Stanley Graham, a neurosurgeon, first examined the plaintiff. Following the plaintiff's release on February 13, 1976, Dr. Graham continued to see the plaintiff on an outpatient basis for four months.
On June 1, 1976 Dr. Graham referred plaintiff to Dr. Clayton Davie for examination and evaluation. Dr. Davie determined that although the plaintiff had suffered an acute severe muscular sprain to the back, there was no evidence of permanent disability from a neurosurgical viewpoint and the plaintiff could return to work.
Subsequently, on June 4, 1976, the defendant requested that the plaintiff return to work. The plaintiff informed the defendant that he was still unable to work. The defendant then terminated the workmen's compensation benefits being paid plaintiff.
The plaintiff was later examined by Dr. Charles Herlihy, a psychiatrist, and Dr. Rosecrans, a clinical psychologist. Both Dr. Herlihy and Dr. Rosecrans determined that the plaintiff was suffering from an emotional or mental injury.
The plaintiff filed a petition for compensation on December 22, 1976 contending that he continued to be disabled after June 4, 1976 and that he was entitled to compensation benefits for permanent partial disability caused by mental and emotional problems resulting from the accident. After hearing the evidence ore tenus, the trial court awarded the plaintiff compensation benefits for twenty-five percent impairment to earning capacity. The defendant has appealed.
The first issue raised on appeal is whether the plaintiff has suffered an injury which is compensable under the workmen's compensation law of Alabama.
The testimony at trial was uncontradicted that the plaintiff suffered from some type of mental injury. Dr. Herlihy saw the plaintiff on several occasions from May 1977 until May 1978. Dr. Herlihy's diagnosis was that the plaintiff was suffering from a "depressive illness" or "depressive reaction" which was precipitated by the accident. The plaintiff's injury was also described by Dr. Herlihy as "psychogenic musculoskeletal reaction." This disorder occurs when a psychic disturbance within a person causes physical pain. The individual experiences anxiety which translates into physical-muscular tension. An example of this disorder would be a tension headache. As a result of this disorder the plaintiff has pain in his back from the accident despite the fact that he suffers from no apparent physical disability. The plaintiff is unable to sit or stand for long periods of time, has pain going down the back of his leg, and is unable to exercise. The plaintiff also has problems sleeping, has nightmares about the accident, and is unable to do physical labor that he was capable of performing *Page 1162 
before the accident. Dr. Herlihy also testified that he would categorize the mental injury suffered by the plaintiff as moderate to severe and that in his opinion the plaintiff was forty percent to sixty percent psychiatrically disabled.
Dr. Herlihy referred the plaintiff to Dr. Rosecrans for the purpose of obtaining a personality profile to aid in his clinical diagnosis. Dr. Rosecrans gave the plaintiff several standard tests used in psychological evaluations including the Minnesota Multiphasic Personality Inventory, the Rorschach Ink Blot Test, and Rector Adult Intelligence Test. Dr. Rosecrans diagnosed the plaintiff's injury as "anxiety neurotic" which he testified was causally related to the accident. Both Dr. Herlihy and Dr. Rosecrans stated that the emotional or mental injury the plaintiff suffered would impair his working ability and his acceptability to employers. The evidence clearly shows that the plaintiff has suffered a mental injury which is a direct result of a physical injury incurred while in the employ of the defendant.
Therefore the question becomes whether the mental injury suffered by the plaintiff is compensable. In Fruehauf Corp. v.Prater, Ala.Civ.App., 360 So.2d 999, cert. den., Ala.,360 So.2d 1003 (1978), we held that if it is established by legal evidence that an employee has suffered a physical injury or trauma in the line and scope of his employment and he develops a neurosis as a proximate result of such injury or trauma which neurosis causes or contributes to an occupational or physical disability, such disability is compensable. The defendant argues that Fruehauf should be limited to its facts and to do otherwise would be to unduly expand the workmen's compensation law. Furthermore, this court's position concerning compensation for psychic injuries and diseases was stated in Fruehauf as follows:
 We recognize the possible difficulty of establishing the existence of or the precipitating cause of any neurosis or psychic disorder. We recognize that there is a distinct possibility of attempted malingering in the absence of objective symptoms. We believe, however, that the difficulty of proof may be overcome by use of expert medical testimony and/or objective evidence. We also believe that malingering will be minimized by the vigilance of a discerning trial judge.
Applying the principles laid down in Fruehauf to the facts in the case at bar, we conclude that the plaintiff has established that the precipitating cause of his psychic disorder was the back injury he suffered while employed by the defendant. Therefore the plaintiff's injury is compensable.
The next issue for our consideration is whether the plaintiff has suffered an impairment of his earning capacity as a proximate result of this mental disorder.
Alabama law recognizes the rule that where post-injury earnings equal or exceed pre-injury earnings, there exists a presumption that the claimant's earning ability has not been reduced. Florence Enameling Co. v. Jones, Ala.Civ.App.,361 So.2d 564, cert. den., Ala., 361 So.2d 567 (1978). However, this presumption may be rebutted by (1) independent evidence which demonstrates incapacity, or (2) evidence which tends to indicate that the post-injury earnings are an unreliable basis for estimating earning capacity. Florence Enameling Co. v.Jones, supra.
We have held that the factors which indicate the unreliability of post-injury earnings include:
 [A]n increase in general wage levels since the time of the claimant's accident; claimant's own greater maturity; receipt of additional training by claimant; longer hours worked by claimant after the accident; payment of wages disproportionate to the claimant's ability to perform work-related tasks because of sympathy for the claimant; and the temporary and unpredictable character of post-injury earnings received by the claimant.
Florence Enameling Co. v. Jones, supra.
The evidence is uncontradicted that the plaintiff's present earnings exceed his pre-injury earnings. However, the trial *Page 1163 
court found that the presumption had been rebutted. The court found that the plaintiff had an employability limitation in the geographical area of thirty to thirty-five percent; that his present job is the only one he could find; that his present employment is with a small business; that he has a personal friendship with the foreman; that promotions and earnings with his present employer could be construed to be the result of special treatment due to his friendship with the foreman and other employees. The findings of the court, as enumerated above, made in support of its conclusion that the presumption had been rebutted, are sufficient to satisfy the rule set out in Florence Enameling Co. v. Jones, supra. However, the trial court also found that the mental record established as a result of the plaintiff's accident would be a deterrent to future employment. Prospective employers often examine a future employee's medical history.
In reviewing judgments in workmen's compensation cases, this court will not look to the weight of the evidence as to any fact found by the trial court, but simply to see if there is any evidence to support the findings of the trier of fact.American Tennis Courts, Inc. v. Hinton, Ala.Civ.App.,378 So.2d 235 (1979). In the case at bar the trial court found that the plaintiff rebutted the presumption that post-injury earnings are commensurate with ability to earn with sufficient legal evidence. We are in agreement and affirm the decision of the trial court.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.